# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201600243

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## PRINCE Y. WIREDU
Personnel Specialist Second Class (E-5), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel Brian E. Kasprzyk, USMCR.
Convening Authority: Commanding General, 3d MAW, MCAS Miramar, San Diego, CA.
Staff Judge Advocate's Recommendation: Major John A. Cacioppo, USMC.
For Appellant: Lieutenant Christopher C. McMahon, JAGC, USN.
For Appellee: Major Cory A. Carver, USMC; Lieutenant James M. Belforti, JAGC, USN.

————————————

Decided 17 August 2017

————————————

Before MARKS, RUGH, AND JONES, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

RUGH, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of sexual assault in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920. The members sentenced the appellant to 12 months' confinement, reduction to pay grade E-1, total forfeitures for 12 months, and a dishonorable discharge. The convening authority (CA) approved the findings and the sentence as adjudged.

The appellant now asserts as error: (1) that in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016), the military judge's admission of charged sexual misconduct pursuant to MILITARY RULE OF EVIDENCE (MIL. R. EVID.) 413, SUPPLEMENT TO MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), and subsequent instructions violated the appellant's due process rights; (2) that the evidence of the appellant's conviction for sexual assault was factually insufficient; and (3) that the military judge committed plain error when instructing the members on reasonable doubt.[1]

After weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses, we are convinced of the appellant's guilt beyond reasonable doubt. *United States v. Rankin*, 63 M.J. 552, 557 (N-M. Ct. Crim. App. 2006) (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987); Art. 66(c), UCMJ), *aff'd on other grounds*, 64 M.J. 348 (C.A.A.F. 2007). However, we agree with the appellant's first assigned error, conclude the error was not harmless beyond reasonable doubt, and take corrective action in our decretal paragraph.

## I. BACKGROUND

Ms. JW and the appellant agreed to meet in person after first connecting online. On 13 January 2013, the appellant picked JW up in his car and drove her to an apartment. Once there, the appellant offered her a drink and attempted to kiss her, both of which she declined. The appellant and JW then relocated to a back bedroom so the appellant's friend could use the living room. Once in the bedroom, the appellant disappeared into a closet, emerging minutes later naked except for a condom. JW alleged that the appellant then sexually assaulted her by penetrating her with his penis despite her continued efforts to push him off and tell him, "please stop."[2]

Both before and during the alleged assault, JW text-messaged or called two separate friends requesting they pick her up:

> [JW]: Just cum get me… Babe im scared [as f***]
>
> [Friend]: Idk wat to do. I cnt walk there
>
> [JW]: Figure out somef-n pl2z
>
> [Friend]: Im tryin. Tell him to take yu home
>
> [JW]: He wont
>
> [Friend]: Well im callin the police
>
> [JW]: No stop

---

[1] Having been resolved by our superior court in *United States v. McClour*, 76 M.J. 23 (C.A.A.F. 2017), we summarily reject the third assigned error. *United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[2] Record at 188.

> [Friend]:  Its either tht ir ICnt get yu iHave no way
>
> [JW]:  I called [the other friend]
>
> [Friend]: Wat she say
>
> [JW]: She cumin 2 get me…[3]

When the other friend arrived, JW was visibly upset. She reported the assault and received a sexual assault forensic examination that evening. The examination revealed a slight abrasion to JW's external genitalia. The examiner also reported discovering JW's tampon pushed deep into JW's vagina. Subsequent analysis of swabs from JW's vagina, external genitalia, breasts and thigh taken during the examination revealed the appellant's DNA present in all four locations.

Petty Officer KR met the appellant at a house party on 25 April 2013. Petty Officer KR alleged that, after dancing, she and the appellant ended up on the floor of the apartment where she agreed to him orally penetrating her before he rubbed his penis against her leg without her consent.

Ms. SB connected with the appellant at a club on 17 May 2013 before agreeing to leave with him for an apartment. Once there, SB alleged that the appellant "started to bite [her] clothes off"[4] before forcing her to engage in vaginal intercourse.

Prior to making their allegations, JW, SB and Petty Officer KR were not acquainted with each other. Based on these allegations, the government charged the appellant with two specifications of sexual assault for the incidents involving JW and SB and one specification of abusive sexual contact for the incident involving Petty Officer KR.

At trial, the government moved *in limine* to use each of the charged acts as evidence of propensity under MIL. R. EVID 413.[5] The defense objected[6] to this use and to the applicable Military Judges' Benchbook[7] model instruction. The military judge granted the government's request[8] and instructed the members concerning the use of charged sexual misconduct as evidence of the appellant's propensity to commit the other charged sexual misconduct:

> Evidence that the accused committed the sexual assault alleged in any of the three specifications under the Charge may have no bearing on your deliberations in relation to the other specifications unless you first determine

---

[3] Prosecution Exhibit (PE) 2 at 2 ([sic] throughout).

[4] Record at 330.

[5] Appellate Exhibit (AE) VIII.

[6] AE XXII

[7] Dept. of the Army Pamphlet 27-9 at 7-13-1 (10 Sep 2014).

[8] Record at 387, 388.

by a preponderance of the evidence; that is, more likely than not, the offenses alleged in that specification occurred. If you determine by a preponderance of the evidence the offense alleged in one of the three specifications under the Charge occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of that offense, you may, nonetheless, then consider the evidence of that offense for its bearing on any matter to which it is relevant in relation to any other specification. You may also consider the evidence of that specification for its tendency, if any, to show the accused's propensity or disposition to engage in sexual assault.[9]

During the opening statement and closing arguments, the trial counsel used, as a rhetorical device, "[t]hree women, one sailor, four months" to highlight the appellant's alleged *modus operandi*, to identify the inherent implausibility of three, unconnected victims, and to imply that the appellant was predisposed to commit sexual assault.[10] Then, the trial counsel concluded his closing argument by directly referencing the model instruction:

> What that instruction tells you, what the law tells you is that if you think it is more likely than not that one of the other sexual assaults on the charge sheet happened, you can consider that sexual assault and the evidence that supports it when determining if the accused is guilty of the other offenses. So for example, if you believe that it is more likely than not that the accused assaulted [SB], then you can consider his assault of [SB] and the evidence of that assault in determining whether he is guilty of assaulting [JW]. Ultimately, it is up to you to decide how much weight to give this evidence.[11]

The members convicted the appellant of sexually assaulting JW but acquitted him of the offenses involving SB and Petty Officer KR.

## II. DISCUSSION

The decision to admit evidence is reviewed for an abuse of discretion. *United States v. Hukill*, 76 M.J. 219, 221 (C.A.A.F. 2017). We review instructional errors *de novo* and evaluate an allegedly erroneous instruction "'in the context of the overall message conveyed' to the members." *Hills*, 75 M.J. at 357. (quoting *United States v. Prather*, 69 M.J. 338, 344 (C.A.A.F. 2011)) (additional citation omitted).

> [T]he use of evidence of charged conduct as [MIL. R. EVID.] 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims or whether the events are connected. Whether

---

[9] Record at 396, 397; AE XLVII at 6.

[10] Record at 156.

[11] *Id.* at 409.

considered by members or a military judge, evidence of a charged and contested offense, of which an accused is presumed innocent, cannot be used as propensity evidence in support of a companion charged offense.

*Hukill*, 76 M.J. at 222. The holding of *Hukill* is clear—the military judge's decision to permit evidence of the charged offenses involving SB and Petty Officer KR to be used as propensity evidence in the case involving JW was error.

Instructional error with constitutional implications is prejudicial unless it is harmless beyond a reasonable doubt. *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). More specifically, we must evaluate whether the instructional error contributed to the members' decision to convict. "An error is not harmless beyond a reasonable doubt when 'there is a reasonable possibility that the [error] complained of might have contributed to the conviction.'" *Hills*, 75 M.J. at 357 (quoting *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (alteration in original)).

Assessing this error for prejudice, we recognize that the members' adherence to the erroneous instruction was not so pernicious as to cause them to find the appellant guilty of the alleged offenses against SB and Petty Officer KR. We also acknowledge the independent evidence supporting the sole, remaining finding of guilt, including JW's text messages and demeanor after the assault, and the results of the sexual assault forensic examination and DNA analysis. However, these factors must be weighed against the absence of other witnesses to the crime or admissions by the appellant, as well as the prominent use of the propensity instruction by the trial counsel at the conclusion of his closing argument. As a result, the instruction may have assisted the members in reaching their guilty verdict. Based on the whole record, this case more closely resembles the facts in *United States v. Ellis*, No. 201500163, 2016 CCA LEXIS 516 (N-M. Ct. Crim. App. 30 Aug 2016), than it does *United States v. Luna*, No. 201500423, 2017 CCA LEXIS 314 (N-M. Ct. Crim. App. 9 May 2017), and we are thus left with reasonable doubt about the effect of the offending instruction on the members.

### III. CONCLUSION

The finding and sentence are set aside. The record is returned to the Judge Advocate General of the Navy for remand to an appropriate CA with a rehearing authorized.

Senior Judge MARKS and Judge JONES concur.

For the Court



R. H. TROIDL
Clerk of Court