*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

_____

**UNITED STATES**
Appellee

**v.**

**Kendell HILLS, Sergeant**
United States Army, Appellant

**No. 15-0767**
Crim. App. No. 20130833

Argued May 10, 2016—Decided June 27, 2016

Military Judges: James Herring, Gregory Bockin, and Steven E. Walburn

For Appellant: *Captain Heather L. Tregle* (argued)*; Lieutenant Colonel Charles D. Lozano* and *Lieutenant Colonel Jonathan F. Potter* (on brief).

For Appellee: *Captain Carling M. Dunham* (argued); *Colonel Mark H. Sydenham* and *Captain Jihan Walker* (on brief); *Major Steven J. Collins*.

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN, and Judges STUCKY, OHLSON, and SPARKS, joined.

_____

Judge RYAN delivered the opinion of the Court.

A panel of officer and enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of abusive sexual contact in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2012), and acquitted Appellant of two specifications of sexual assault in violation of Article 120, UCMJ. Appellant was sentenced to confinement for six months, reduction to pay grade of E-1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged. The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and the sentence. *United States v. Hills*, No. ARMY 20130833, 2015 CCA LEXIS 268, at *2, 2015 WL 3940965, at *1 (A. Ct. Crim. App. June 25, 2015)

(unpublished). We granted Appellant's petition to review the following issue:

> Whether the military judge abused his discretion by granting the Government's motion to use the charged sexual misconduct for Military Rule of Evidence 413 purposes to prove propensity to commit the charged sexual misconduct.

We hold that because the evidence of the charged sexual misconduct was already admissible in order to prove the offenses at issue, the application of Military Rule of Evidence (M.R.E.) 413 — a rule of admissibility for evidence that would otherwise not be admissible — was error. Neither the text of M.R.E. 413 nor the legislative history of its federal counterpart suggests that the rule was intended to permit the government to show propensity by relying on the very acts the government needs to prove beyond a reasonable doubt in the same case. Moreover, Appellant pleaded not guilty to the Charge and specifications, and the instructions that the military judge provided both undermined the presumption of innocence and created a tangible risk that Appellant was convicted based on evidence that did not establish his guilt beyond a reasonable doubt.

## I. FACTS

On November 24, 2012, Appellant hosted a house party, which his accuser, SPC PV, attended. SPC PV became visibly intoxicated. After falling off a couch and stumbling, she was helped onto a mattress in a bedroom. After sleeping for a while, SPC PV went to the bathroom to vomit, after which an unknown person carried her into a different bedroom where she fell back asleep. SPC PV alleged that when she awoke, Appellant was standing behind her and penetrating her vagina with his penis while she was on her stomach. SPC PV testified that she was able to identify Appellant by his white sweatpants because "there was light somewhere and white shows up a bit brighter," and Appellant was the only individual wearing white sweatpants at the party. SPC PV then passed out again. SPC PV alleged that when she awoke some time later, Appellant was penetrating her anus with his penis. SPC PV then passed out again. SPC PV further claimed that when she awoke again, Appellant was us-

ing her hand to touch his penis. SPC PV then got up and went to the bathroom to vomit. SPC PV alleged that when she got out of the bed, she saw Appellant's face.

The Article 32, UCMJ, 10 U.S.C. § 832 (2012), investigating officer recommended against pursuing a court-martial against Appellant. She found SPC PV's testimony to be contradictory and noted that the DNA evidence was inconclusive. Nevertheless, the case proceeded to court-martial.

Prior to trial and over defense counsel's objections, the military judge granted the Government's motion under M.R.E. 413 to admit all of Appellant's charged conduct as evidence of Appellant's propensity to commit the sexual assaults with which he was charged. The military judge made threshold findings for admission of M.R.E. 413 evidence and conducted an M.R.E. 403 balancing test.

In his propensity instruction, the military judge included the standard spillover instruction, stating:

> Each offense must stand on its own, and you must keep the evidence of each offense separate….
>
> The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt. Proof of one offense carries with it no inference that the accused is guilty of any other offense.
>
> … Specifically, evidence that the accused committed the sexual assault offense alleged in Specification 2 of The Charge, or the sexual contact offense alleged in Specification 3 of The Charge has *no bearing* on your deliberations in relation to any other charged offenses.

(Emphasis added.) However, the military judge also instructed the panel, based on his M.R.E. 413 ruling, that if the panel "determine[s] by a preponderance of evidence that it is more likely than not that the sexual offenses occurred":

> evidence that the accused committed a sexual assault offense … *may have a bearing* on your deliberations in relation to the other charged sexual assault offenses ….

> [This may include] its tendency, if any, to
> show the accused's propensity or predisposition
> to engage in sexual assault.

(Emphasis added.) Subsequently, the panel found Appellant guilty of abusive sexual contact and not guilty of two specifications of sexual assault.

## II.    ACCA DECISION

On appeal, Appellant argued that the military judge abused his discretion by granting the Government's M.R.E. 413 motion to use the charged sexual misconduct to show Appellant's propensity to commit the same charged sexual misconduct. *Hills*, 2015 CCA LEXIS 268, at *2, 2015 WL 3940965, at *1. The ACCA held that, while the military judge properly found that the charged offenses satisfied the threshold requirements for admission as M.R.E. 413 evidence, the military judge possibly erred in his application of the M.R.E. 403 balancing test. *Hills*, 2015 CCA LEXIS 268, at *19–25, 2015 WL 3940965, at *7–9. Because the events happened within a two-hour period, the conduct had little probative value in demonstrating propensity. *Hills*, 2015 CCA LEXIS 268, at *22–23, 2015 WL 3940965, at *8. The court held that because of the evidence's low probative value, "the risk of unfair prejudice does not have to be high to substantially outweigh the probative value." *Hills*, 2015 CCA LEXIS 268, at *24, 2015 WL 3940965, at *9. However, the ACCA determined that the military judge's conclusion under the M.R.E. 403 balancing test did not have a substantial influence on the findings and that, therefore, it need not decide whether there was an abuse of discretion. *Hills*, 2015 CCA LEXIS 268, at *24–25, 2015 WL 3940965, at *9–10. The ACCA concluded that there was no prejudice because the evidence used to prove the abusive sexual contact specification, which Appellant was convicted of, was stronger than the evidence involving the two sexual assault specifications, *Hills*, 2015 CCA LEXIS 268, at *27, 2015 WL 3940965, at *10, and that all of the evidence was already before the panel. *Hills*, 2015 CCA LEXIS 268, at *28, 2015 WL 3940965, at *10. It also held that there was no prejudice because the propensity issue only arose during the military judge's instructions, and neither party discussed propensity

in their closing arguments. *Hills*, 2015 CCA LEXIS 268, at *28–29, 2015 WL 3940965, at *10.

### III.     DISCUSSION

Though a question of first impression, it seems obvious that it is impermissible to utilize M.R.E. 413 to show that charged conduct demonstrates an accused's propensity to commit … the charged conduct. We thus part ways with the ACCA's characterization of the mode and import of the error in this case as well as with its approach to how such error should be analyzed and weighted. While we hold that admitting charged conduct as M.R.E. 413 evidence was an abuse of discretion, we also hold that the instructions that accompanied the so-called propensity evidence in this case constituted constitutional error that was not harmless beyond a reasonable doubt.

### A.

A military judge's decision to admit evidence is reviewed for an abuse of discretion. *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013). The meaning and scope of M.R.E. 413 is a question of law that we review de novo. *LRM v. Kastenberg*, 72 M.J. 364, 369 (C.A.A.F. 2013). We thus first review de novo the meaning and scope of M.R.E. 413 to determine whether the military judge's admission of charged conduct under M.R.E. 413 was "guided by erroneous legal conclusions," *Koon v. United States*, 518 U.S. 81, 100 (1996), before determining whether the military judge abused his discretion in admitting the M.R.E. 413 evidence as propensity evidence, *see United States v. Clayton*, 67 M.J. 283, 286 (C.A.A.F. 2009).

M.R.E. 413 is based on Federal Rule of Evidence (Fed. R. Evid.) 413. *United States v. Berry*, 61 M.J. 91, 95 n.2 (C.A.A.F. 2005). M.R.E. 413 is an exception to the ordinary rule that evidence of uncharged misconduct or prior convictions is generally inadmissible and may not be used to show an accused's propensity or predisposition to commit charged conduct. *See* M.R.E. 404(b); *Berry*, 61 M.J. at 95; *United States v. Wright*, 53 M.J. 476, 480 (C.A.A.F. 2000). M.R.E. 413(a) provides that "[i]n a court-martial in which the accused is charged with an offense of sexual assault, evidence of the accused's commission of one or more offenses of sexual

assault is admissible and may be considered for its bearing on any manner to which it is relevant." This includes using evidence of either a prior sexual assault conviction or uncharged sexual assaults to prove that an accused has a propensity to commit sexual assault. *United States v. James,* 63 M.J. 217, 220–22 (C.A.A.F. 2006). In other words, despite the ordinary rule prohibiting the use of propensity evidence, members are permitted to consider testimony of past victims alleging that an accused perpetrated a sex offense upon them in order to infer that an accused has the propensity to commit the charged sex offense. *See Wright*, 53 M.J. at 480.

We have already held that M.R.E. 413, subject to the M.R.E. 403 balancing test and proper instructions, is constitutional, *Wright*, 53 M.J. at 482–83; that an offense to which an accused has pleaded guilty or been found guilty can be admitted and considered under M.R.E. 413 to show propensity to commit the sexual assaults to which he pleaded not guilty, *id.* at 479; and that uncharged sexual assaults that occurred subsequent to the charged offenses are not barred from being admitted under M.R.E. 413, *James*, 63 M.J. at 218. However, none of these holdings answer the question whether M.R.E. 413 may be used as it was in this case.

We hold that it may not. Neither this Court nor any federal circuit court[1] has permitted the use of M.R.E. 413 or Fed. R. Evid. 413 as a mechanism for admitting evidence of charged conduct to which an accused has pleaded not guilty in order to show a propensity to commit the very same charged conduct.

For example, in *Wright*, the accused had already pleaded guilty to the misconduct that was being admitted as M.R.E.

---

[1] Contrary to what the Government argues, the United States Court of Appeals for the Seventh Circuit did not hold in *United States v. Rogers* – a non-precedential disposition – that charged conduct may be admitted as propensity evidence under M.R.E. 413. 474 F. App'x 463, 473–74 (7th Cir. 2012). While Fed. R. Evid. 413 was the direct issue in the prior decision, one involving *uncharged* conduct, *United States v. Rogers*, 587 F.3d 816, 818 (7th Cir. 2009), the latter decision addressed severance, not Fed. R. Evid. 413 admissibility, 474 F. App'x at 464–65, and made no holding with respect to using charged conduct as propensity evidence.

413 evidence to bolster another charge, so it was no longer an offense on which the members had to deliberate. 53 M.J. at 479. In *United States v. Burton*, the appellant alleged improper argument based on trial counsel's statements during closing arguments that suggested that all of the charged sexual assaults showed the accused's propensity to commit sexual assaults. *See* 67 M.J. 150, 152 (C.A.A.F. 2009). Although this Court held that "evidence of the charged offenses was properly admitted," because the evidence "was primary proof of the charged offense," it also held that evidence of the charged offenses did not constitute M.R.E. 413 evidence, as the military judge never admitted the charged conduct as propensity evidence under M.R.E. 413. *Id.* at 152–53.

Moreover, neither the structure of M.R.E. 413 and its relationship to M.R.E. 404(b) nor the legislative history of the federal rule upon which it is based suggests that M.R.E. 413 and its attendant instructions may be applied to evidence of charged misconduct.

First, the structure of the rule suggests that it was aimed at conduct other than charged offenses. The notice provision in M.R.E. 413(b), which requires the government to disclose the proposed M.R.E. 413 evidence to the accused five days before trial, logically implies that only evidence of uncharged offenses (of which the accused would not otherwise be aware absent disclosure) are contemplated by the rule. *See also* 139 Cong. Rec. S15073 (daily ed. Nov. 4, 1993) (statement of Sen. Dole) (Fed. R. Evid. 413 "require[s] the Government to disclose the evidence to the defendant, including a statement of witnesses or a summary of the substance of any testimony expected to be offered at least 15 days before the scheduled date of trial.").

Second, as we recognized in *Wright*, the effect of M.R.E. 413 was "'to put evidence of uncharged offenses in sexual assault … cases on the same footing as other types of evidence that are not subject to a special exclusionary rule.'" *Wright*, 53 M.J. at 480 (alteration in the original) (quoting 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari)). Charged misconduct is already admissible at trial under M.R.E. 401 and 402, and it is not subject to exclusion under M.R.E. 404(b). Thus, as a matter of logic, it does not fall under M.R.E. 413, which serves as an exception

to M.R.E. 404(b). *See Berry*, 61 M.J. at 95; *Wright*, 53 M.J. at 480; *see also* 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of principal House sponsor Rep. Molinari) ("The new rules will supersede in sex offense cases the restrictive aspects of Federal [R]ule of [E]vidence 404(b).").

Further, the legislative history of the federal counterpart, Fed. R. Evid. 413, also suggests that M.R.E. 413 was not designed to apply to charged misconduct. *See* David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi.-Kent L. Rev. 15, 22 (1994) ("Rather, the effect of the new rules is to put evidence of *uncharged* offenses in sexual assault and child molestation cases on the same footing as other types of evidence that are not subject to a special exclusionary rule." (emphasis added));[2] 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari) ("No time limit is imposed on the *uncharged* offenses for which evidence may be admitted....") (emphasis added).

The rule was intended to address recidivism, *cf. Wright*, 53 M.J. at 481, and it permits bolstering the credibility of a victim because "[k]nowledge that the defendant has committed rapes on other occasions is frequently critical in assessing the relative plausibility of [the victim's] claims," Karp, *supra*, at 21. While M.R.E. 413 was intended to permit the members to consider the testimony of other victims with respect to an accused's past sexual offenses, *see* Karp, *supra*, at 21, there is no indication that M.R.E. 413 was intended to bolster the credibility of the named victim through inferences drawn from the same allegations of the same named victim.

Accordingly, for the reasons stated above, the military judge operated under an erroneous view of the law when he admitted the charged offenses as M.R.E. 413 evidence to

---

[2] Mr. Karp was one of the original drafters of Fed. R. Evid. 413, and Representative Susan Molinari stated in a speech to the House that his address, which was reprinted as a law review article, "should … be considered an authoritative part of [Fed. R. Evid. 413's] legislative history." 140 Cong. Rec. H8991 (daily ed. Aug. 21, 1994) (statement of Rep. Molinari).

show Appellant's propensity to commit the charged offenses, and thus abused his discretion.

## B.

Moreover, the Government's position that the charged conduct to which Appellant pleaded not guilty was properly admitted under M.R.E. 413 raises serious constitutional concerns with respect to the fundamental fairness of the trial because of the instructions that accompany such propensity evidence. While an error in deciding that M.R.E. 413 evidence of uncharged misconduct or prior convictions for sexual assaults meets the balancing test under M.R.E. 403 and is admissible is usually nonconstitutional in nature, *Solomon*, 72 M.J. at 182, here, the error involved using charged misconduct as M.R.E. 413 evidence, which permeated the military judge's instructions to the members and violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error.

A foundational tenet of the Due Process Clause, U.S. Const. amend. V., is that an accused is presumed innocent until proven guilty. *In re Winship*, 397 U.S. 358, 363 (1970); *see also Coffin v. United States*, 156 U.S. 432, 453–54 (1895) ("The principle that there is a presumption of innocence in favor of the accused is the undoubted law, axiomatic and elementary, and its enforcement lies at the foundation of the administration of our criminal law."). An accused has an absolute right to the presumption of innocence until the government has proven every element of every offense "beyond a reasonable doubt," and members may only determine that the accused is guilty if the government has met that burden. *In re Winship*, 397 U.S. at 364.

This Court has held that, in general, M.R.E. 413 does not violate an accused's right to a presumption of innocence. *See Wright*, 53 M.J. at 483. We continue to hold that proper M.R.E. 413 evidence is not fundamentally unfair; is admissible on any matter to which it is relevant; and that, subject to M.R.E. 403, the presumption is in favor of admissibility. *See id.*

As we noted in *Wright*, however, M.R.E. 413 "would be fundamentally unfair if it undermines the presumption of

innocence and the requirement that the prosecution prove guilt beyond a reasonable doubt." 53 M.J. at 481. In *Wright*, the appellant had already pleaded guilty to the offense used as propensity evidence, so he was no longer presumed innocent of that offense. *See id.* at 479. Here, Appellant pleaded not guilty to the charges, so he still enjoyed the presumption of innocence with respect to all offenses.

It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent.[3]

In this case, after the military judge granted the Government's M.R.E. 413 motion, the members were instructed that evidence that Appellant committed one of the charged sexual assaults:

> may have a bearing on your deliberations in relation to the other charged sexual assault offenses … only under the circumstances I am about to describe:

> First, you must determine by a preponderance of evidence that it is more likely than not that the sexual assault offense occurred;

> If you determine by a preponderance of the evidence that one or more of the offenses alleged in Specifications 1, 2, or 3 of the Charge occurred, even if you are not convinced beyond a reasonable doubt that the accused is guilty of one or more of those offenses, you may nonetheless consider the evidence of such offenses, or its bearing on any matter to which it is relevant in relation to the other sexual assault offenses;

> You may also consider the evidence of such other acts of sexual assault for its tendency, if any, to show the accused's propensity to engage in sexual assault.

---

[3] The fact that no presumption of innocence attaches to uncharged conduct is why the use of charged conduct as propensity evidence is analytically distinct from uncharged conduct. That the Government cannot use M.R.E. 413 if it elects to join multiple sex offenses in a single trial is irrelevant to our analysis.

Ellipsis in original.

It is true that the military judge went on to tell the members that the Government had to prove each element beyond a reasonable doubt and that "one offense carries no inference that the accused is guilty of another offense." But the military judge concluded the spillover instruction by re-iterating, "However, [the Government] may demonstrate that the accused has a propensity to commit that type of offense."

Instructional errors are reviewed de novo. *United States v. Killion,* 75 M.J. 209, 214 (C.A.A.F. 2016). We evaluate a military judge's instructions "in the context of the overall message conveyed" to the members. *See United States v. Prather,* 69 M.J. 338, 344 (C.A.A.F. 2011) (internal quotation marks omitted) (quoting *Humanik v. Beyer*, 871 F.2d 432, 441 (3d Cir. 1989)). The instructions in this case provided the members with directly contradictory statements about the bearing that one charged offense could have on another, one of which required the members to discard the accused's presumption of innocence, and with two different burdens of proof — preponderance of the evidence and beyond a reasonable doubt. Evaluating the instructions in toto, we cannot say that Appellant's right to a presumption of innocence and to be convicted only by proof beyond a reasonable doubt was not seriously muddled and compromised by the instructions as a whole.

While, in *People v. Villatoro,* 281 P.3d 390, 400 (Cal. 2012), the California Supreme Court did not consider the issue of the accused's right to be presumed innocent of all charges, the court highlighted the issue of conflicting burdens of proof. In *Villatoro*, the judge admitted five instances of rape against five separate victims with similar modus operandi as propensity evidence under Cal. Evid. Code § 1108 (2009).[4] *Villatoro*, 281 P.3d at 394–95. But that decision turned in part on the fact that "the modified instruction did not provide that the charged offenses used to prove propen-

---

[4] The issue before us has no bearing on our jurisprudence with respect to joinder, severance, or the use of multiple offenses with similar facts to argue identity, absence of mistake, modus operandi, etc.

sity must be proven by a preponderance of the evidence." *Id.*
at 400. The court observed, "[T]he instruction clearly told
the jury that all offenses must be proven beyond a reasona-
ble doubt, even those used to draw an inference of propensi-
ty. Thus, there was no risk the jury would apply an imper-
missibly low standard of proof." *Id.*

In contrast, the instructions in this case invited the
members to bootstrap their ultimate determination of the
accused's guilt with respect to one offense using the prepon-
derance of the evidence burden of proof with respect to an-
other offense. Quite simply, we hold not only that charged
offenses are not properly admitted under M.R.E. 413 to
prove a propensity to commit the charged offenses, but also
that the muddled accompanying instructions implicate "fun-
damental conceptions of justice" under the Due Process
Clause by creating the risk that the members would apply
an impermissibly low standard of proof, undermining both
"the presumption of innocence and the requirement that the
prosecution prove guilt beyond a reasonable doubt," *Wright*,
53 M.J. at 481 (internal quotation marks omitted) (citation
omitted).

## C.

"If instructional error is found [when] there are constitu-
tional dimensions at play, [the appellant's] claims 'must be
tested for prejudice under the standard of harmless beyond a
reasonable doubt.'" *United States v. Wolford*, 62 M.J. 418,
420 (C.A.A.F. 2006) (quoting *United States v. Kreutzer*, 61
M.J. 293, 298 (C.A.A.F. 2005)). "'The inquiry for determining
whether constitutional error is harmless beyond a reasona-
ble doubt is whether, beyond a reasonable doubt, the error
did not contribute to the defendant's conviction or sentence.'"
*Id.* (quoting *Kreutzer,* 61 M.J. at 298). An error is not harm-
less beyond a reasonable doubt when "there is a reasonable
possibility that the [error] complained of might have con-
tributed to the conviction." *United States v. Moran*, 65 M.J.
178, 187 (C.A.A.F. 2007) (internal quotation marks omitted)
(quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).

Given that we apply a different standard for as-
sessing the error than the ACCA did, we also reach a differ-
ent conclusion regarding the error's import to the outcome of

the case. The juxtaposition of the preponderance of the evidence standard with the proof beyond a reasonable doubt standard with respect to the elements of the same offenses would tax the brain of even a trained lawyer. And, as the Supreme Court has observed, "Jurors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might." *Boyde v. California*, 494 U.S. 370, 380 (1990).

We are not convinced beyond a reasonable doubt that the conflicting standards of proof and directly contradictory statements about the bearing that one charged offense could have on another did not contribute to the verdict. *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007) ("To say that an error did not contribute to the verdict is, rather, to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.") (internal quotation marks omitted) (citation omitted). We note that the Government's case was weak as there was no eyewitness testimony other than the allegations of the accuser, the members rejected the accuser's other allegations against the Appellant, and there was no conclusive physical evidence. We cannot know whether the instructions may have tipped the balance in the members' ultimate determination. The instructions were, therefore, not harmless beyond a reasonable doubt.

## IV.    JUDGMENT

The decision of the United States Army Court of Criminal Appeals is reversed, and the findings and sentence are set aside. The record is returned to the Judge Advocate General of the Army. A rehearing is authorized.