# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, CELTNIEKS, and HAGLER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 JAMESON T. HAZELBOWER**
**United States Army, Appellant**

ARMY 20150335

Headquarters, Fort Campbell
Steven E. Walburn, Military Judge
Lieutenant Colonel Robert C. Insani, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Captain Heather L. Tregle, JA; Captain Katherine L. DePaul, JA (on brief); Lieutenant Colonel Melissa R. Covolesky, JA; Captain Katherine L. DePaul, JA (on reply brief); Lieutenant Colonel Tiffany M. Chapman, JA; Lieutenant Colonel Christopher D. Carrier, JA; Captain Joshua B. Fix, JA (on brief and reply brief following remand).

For Appellee: Colonel Mark H. Sydenham, JA; Major Melissa Dasgupta Smith, JA; Captain Jennifer A. Donahue, JA (on brief); Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Virginia H. Tinsley, JA; Captain Joshua B. Banister, JA (on brief following remand).

22 November 2017

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

BURTON, Senior Judge:

This case is again before us for review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (2012) [hereinafter UCMJ]. After considering the additional pleadings submitted by the parties and the entire record in light of our superior court's holding in *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017), we are convinced appellant's conviction is legally and factually sufficient. Given the overwhelming strength of the government's case, the weak defense case, the evidence of appellant's uncharged misconduct, and the military judge's characterization that any propensity evidence "had little to no effect on the Court's deliberations and findings," we are convinced the propensity evidence did not

contribute to the findings of guilty or appellant's sentence, and any error was harmless beyond a reasonable doubt.

A military judge sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of desertion, four specifications of rape, two specifications of rape of a child, two specifications of sexual abuse of a child, sexual assault of a child, and possession of child pornography, in violation of Articles 85, 120, 120b, and 134, UCMJ. The military judge sentenced appellant to a dishonorable discharge, confinement for fifty years, and forfeiture of all pay and allowances. Appellant received 201 days of confinement credit. The convening authority approved the sentence as adjudged.

On 12 October 2016, this court affirmed the findings and sentence in this case. *United States v. Hazelbower*, ARMY 20150335 (Army Ct. Crim App. 12 Oct. 2016) (summ. disp.). On 12 January 2017, the Court of Appeals for the Armed Forces (CAAF) granted appellant's petition for grant of review. *United States v. Hazelbower*, 76 M.J. 63 (C.A.A.F. 2017). On 27 July 2017, the CAAF set aside our decision and remanded the case to this court for consideration of the granted issue in light of *Hukill*. *United States v. Hazelbower*, 76 M.J. 441 (C.A.A.F. 2017). On the same day, the record of trial was returned to this court for further review.

## BACKGROUND

Appellant stands convicted of sexual offenses against three different victims, AA, SC, and MB. The military judge granted a government motion, over defense objection, to allow use of the charged sexual misconduct for Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 and Mil. R. Evid. 414 purposes to show appellant's propensity to commit the charged sexual misconduct. Appellant alleges the military judge abused his discretion in so ruling. After hearing the evidence and arguments from both trial and defense counsel, which included argument concerning propensity evidence, the military judge found appellant guilty of all charges and specifications.

In this judge-alone case, the military judge articulated his reasoning regarding the admission and use of evidence under Mil. R. Evid. 413 and Mil. R. Evid. 414 as follows:

> The Court has, in fact, conducted an [Mil. R. Evid.] 403 balancing test on those three pieces of propensity evidence and has found that they are admissible for sentencing purposes and again, the Court will provide a written ruling to that effect, and importantly, the Court notes that that evidence was also considered during the findings only for the limited purpose of propensity and the court used it only for that limited purpose and it had little to no effect

2

> on the Court's deliberations and findings, even though the
> Court finds it was properly admissible.

## LAW AND DISCUSSION

*Military Rules of Evidence 413 and 414.*[*]

In *United States v. Hills*, our superior court ruled the use of charged misconduct and propensity evidence to prove other charged misconduct pursuant to Mil. R. Evid. 413 was improper. *See* 75 M.J. 350, 356 (C.A.A.F. 2016) ("It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent."). In *Hukill*, our superior court extended *Hills* to military judge alone cases. *See Hukill*, 76 M.J. at 222 ("We therefore clarify that under *Hills*, the use of evidence of charged conduct as [Mil. R. Evid.] 413 propensity evidence for other charged conduct in the same case is error, regardless of the forum, the number of victims, or whether the events are connected. Whether considered by members or a military judge, evidence of a charged and contested offense . . . cannot be used as propensity evidence in support of a companion charged offense."). Moreover, the CAAF found the presumption that a military judge knows and follows the law was rebutted by the evidence in the record and the error was not harmless beyond a reasonable doubt. *See id.* at 223. ("The presumption is that military judges will correctly follow the law, which would normally result in no legal error, not that an acknowledged error is harmless. The presumption cannot somehow rectify the error or render it harmless.").

Error in admitting propensity evidence of charged conduct is constitutional in nature. Therefore we must examine the military judge's ruling under the constitutional standard in determining whether the error was harmless. When an error rises to a constitutional dimension, we may only affirm the affected findings of guilty if we determine the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 24 (1967); *United States v. Kreutzer,* 61 M.J. 293, 298–99 (C.A.A.F. 2005). "The inquiry for determining whether constitutional error is harmless beyond a reasonable doubt is whether, beyond a reasonable doubt, the error did not contribute to the defendant's conviction or sentence." *Kreutzer*, 61 M.J. at 298 (citations and internal quotation marks omitted).

Here, while we find the military judge's use of propensity evidence of charged misconduct created an error rising to a constitutional dimension, the error was harmless beyond a reasonable doubt. The government's case was strong on each charged sexual assault offense, independent of any inference of propensity.

---

[*] We specified this issue to the parties on 7 September 2016, following oral argument.

Appellant sexually assaulted three victims on separate occasions using a similar plan or scheme. All three victims testified.

Appellant was convicted of four specifications of sexual assault against AA on 10 December 2013 at Fort Campbell, Kentucky. AA testified that she met appellant on a social media website where appellant stated he was sixteen years old. AA was fifteen years old at the time. Appellant met AA and drove her to an isolated part of Fort Campbell, where he twice penetrated her mouth with his penis by grabbing the back of her neck and forcing her down onto his penis. AA testified that "every time I would try to resist, it would just—he would be more aggressive with it . . . ." Appellant also forcibly penetrated AA's anus with his finger, and forcibly penetrated her anus with his penis. Appellant then dropped AA off at a shopette. In text messages before the incident, AA told appellant, "I said nothing sexual" and "Is this the only reason why you want to hangout?" Appellant replied "No but it's gonna happen." The testimony of AA was clear, detailed, and compelling. AA eventually reported this incident to her mother, resulting in the investigation of appellant. These specifications were included in Charge I.

Appellant sexually assaulted SC, a fourteen-year-old girl, on two occasions. Appellant initiated contact with SC through Skype. SC testified that appellant first visited her at home after school, and nothing sexual occurred. A few days later, in mid-to late September 2013, appellant visited SC after school and they started watching a movie. Appellant then tried to kiss SC, and she didn't try to stop it. Appellant kept moving forward, and SC pulled back. Appellant then pushed SC down on the couch on her back, put his hands down her pants, and penetrated her vagina with his fingers. SC said, "Please stop." Appellant then pulled down SC's pants, and while SC was squirming and continually saying "Stop", appellant penetrated her vulva with his penis, and then anally raped SC, telling her, "It will all be over soon." Appellant was not wearing a condom; he ejaculated inside SC's anus. Appellant then put his clothes on, said he was sorry, and walked out.

Following this incident, SC continued to talk to appellant on Skype because she "didn't want [appellant] to come back and do it again." SC told appellant she was in Texas for a month when she was only there for a week, and that she was moving, in an attempt to stop appellant from coming back again. In November 2013, appellant went to SC's house unannounced. After appellant knocked on the door, SC realized who was there and tried to close the door. Appellant forced his way into the house, stating he just wanted to talk, and SC asked him to "[p]lease get out." Appellant then walked toward SC, pulled her pants to her ankles, and proceeded to penetrate her vulva and anus with his penis, covering SC's mouth with his hand to keep her quiet. SC asked appellant to stop. SC testified, "I yelled 'Stop' and 'Ow.'" Appellant again stated, "It will all be over." After the assault, appellant put his clothes on, said he was sorry, and walked out the door, leaving SC crying in the living room.

SC's testimony was clear and compelling. The government also called Dr. MS, a child and adult forensic psychiatrist, who explained the unpredictable ways children react to sexual assault, and how SC's "playing along" with appellant in text messages after he sexually assaulted her the first time was a result of SC being too naïve to understand what she was playing with. The above conduct was included in two of the specifications of Charge II.

Appellant sexually assaulted MB, a fifteen-year-old girl, between June and mid-October 2013, in Elizabethtown, Kentucky. Appellant met MB through Skype and texting, and appellant and MB electronically exchanged naked photographs of each other. Appellant came to MB's home late one night through the basement door to avoid her father, and they watched television together. Nothing sexual occurred during this visit. Two weeks later appellant again came to visit MB, coming in the house through the basement door. On this occasion appellant and MB engaged in consensual oral, vaginal, and anal intercourse. This conduct is the gravamen of Specification 1 of The Additional Charge.

In addition to the charged conduct in this case, evidence was introduced of uncharged misconduct by appellant that occurred while appellant was absent without leave from 10 January 2014 to 29 March 2014. Appellant met fifteen-year-old CS on social media, and then visited CS at her aunt's house in Rockford, Illinois. CS testified that appellant made physical contact with her on the front porch, to include hugging, kissing, grabbing her butt, and rubbing her stomach. CS retreated to the house and appellant remained outside for an hour asking her to come back outside. Appellant also met AS, a fifteen-year-old girl on a social media site, exchanging messages with her. Appellant drove to her home in Winnebago, Illinois. AS testified that appellant stayed in his car when he arrived. When AS proceeded to the side of the car, appellant pulled her hand into the car and made her stroke his penis. AS got into the car shortly thereafter, and appellant was stroking his penis when the police arrived on the scene. The police noticed that appellant had an erection when they pulled him out of the car. Appellant made a statement essentially corroborating AS's version of events, and he was eventually convicted of Indecent Solicitation of a Child and Aggravated Criminal Sexual Abuse in Winnebago County, Illinois.

In contrast to the strong government case described above, the defense case was weak. The defense argued that the text message traffic between appellant and AA and SC showed they both consented to the sexual encounters with appellant, and that MB lied about her age in her online profile. The defense also argued that all three victims had a motivation to lie. However, the testimony of the three victims in this case, appellant's own text messages stating he would have sex with AA and SC without their consent, and his admission to SC when confronted with why he raped her ("Bcuz it was like a fantasy ive wanted to try then knowing I cud made me so horny") overcome any inferences that could be drawn from the online message traffic between appellant and his victims.

Viewing the evidence as a whole, we are convinced beyond a reasonable doubt that the use of charged conduct as propensity evidence by the military judge was harmless beyond a reasonable doubt.

## CONCLUSION

On consideration of the entire record, including the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), the findings of guilty and sentence are AFFIRMED.

Judge CELTNIEKS and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court