# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

––––––––––––––––––

**No. ACM 38851 (rem)**

––––––––––––––––––

**UNITED STATES**
*Appellee*

**v.**

**Michael R. LIGHTSEY**
Airman First Class (E-3), U.S. Air Force, *Appellant*

––––––––––––––––––

On Remand from
the United States Court of Appeals for the Armed Forces

Decided 30 April 2018

––––––––––––––––––

*Military Judge:* Marvin W. Tubbs II.

*Approved sentence:* Dishonorable discharge, confinement for 30 months, and reduction to E-1. Sentence adjudged 7 January 2015 by GCM convened at Joint Base San Antonio-Lackland, Texas.

*For Appellant:* Major Patricia Encarnación Miranda, USAF; Philip D. Cave, Esquire.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Mary Ellen Payne, Esquire.

Before HARDING, SPERANZA, and HUYGEN, *Appellate Military Judges.*

Senior Judge HARDING delivered the opinion of the court, in which Judges SPERANZA and HUYGEN joined.

––––––––––––––––––

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

––––––––––––––––––

HARDING, Senior Judge:

Appellant was charged with abusive sexual contact of three patients under his care when he worked as a medical technician at Joint Base San Antonio-Lackland, Texas. Appellant was convicted, contrary to his pleas, by a military judge sitting alone as a general court-martial of two specifications of abusive sexual contact involving a single victim in violation of Article 120, UCMJ, 10 U.S.C. § 920. The military judge acquitted Appellant of the specifications of abusive sexual contact involving the two other patients. The approved sentence consisted of a dishonorable discharge, confinement for 30 months, and reduction to E-1.

In Appellant's initial appeal to this court, we affirmed the findings and sentence. *United States v. Lightsey*, No. ACM 38851, 2017 CCA LEXIS 17 (A.F. Ct. Crim. App. 10 Jan. 2017) (unpub. op.) (*Lightsey I*). The United States Court of Appeals for the Armed Forces (CAAF) granted review on the issue of whether this court erred when we held: (1) that the military judge's use of charged conduct for propensity purposes was not constitutional error; and (2) even if it was constitutional error, it was harmless beyond a reasonable doubt. In *United States v. Lightsey*, 76 M.J. 439 (C.A.A.F. 2017) (mem.) (*Lightsey II*), CAAF granted the petition, set aside our prior decision, and remanded the case to this court for further consideration in light of *United States v. Hukill*, 76 M.J. 219 (C.A.A.F. 2017). Following our superior court's holdings in *United States v. Hills,* 75 M.J. 350 (C.A.A.F. 2016), *Hukill*, and *United States v. Guardado,* 77 M.J. 90 (C.A.A.F.  2017), we conclude the error is not harmless beyond a reasonable doubt and we thus set aside the convictions and sentence.

## I. BACKGROUND

Appellant was a medical technician who worked in the Wilford Hall Post Anesthesia Care Unit (PACU), Joint Base San Antonio-Lackland, Texas. Captain (Capt) KH, the victim for the specifications of which Appellant was convicted, had dental surgery at Wilford Hall. Capt KH was sedated for the surgery and, after the operation, she awoke in the PACU wearing only a loose-fitting hospital gown that tied in the back. In order to monitor her recovery from anesthesia, electrocardiogram (EKG) leads had been placed above and below her breasts as well as on her hips. Appellant was one of the medical technicians attending to Capt KH in the PACU.

Once Capt KH had recovered to a sufficient level of alertness, the attending staff prepared her for transfer to the same-day surgery ward. Although she was conscious, Capt KH's eyes remained closed. As Appellant removed her EKG leads, he grazed her left breast in a way that Capt KH—who had five prior dental surgeries for which she was sedated and had EKG leads attached

near her breasts—described as "not normal for when you take a lead off." Appellant then grabbed her left breast with his entire hand, pinched her nipple for a few seconds, and then did the same to her right breast.

After Capt KH's left breast was touched, she opened her eyes and saw about half of Appellant's face. She described him as a Caucasian male with bushy eyebrows and brown hair who was wearing royal blue scrubs. He also wore a name tag with "A1C" rank and the name "Steigh or Stie" on it. Appellant then slid his two fingers towards Capt KH's crotch, but she lifted her right side off the bed to get his hand off her. Appellant then wheeled her out of the PACU on a gurney to transport her to a room in the same-day surgery ward. While in the hallway, Appellant stopped the gurney and placed his hand under the blanket and penetrated her labia with one finger.

When Capt KH arrived at the next room, her husband met her there, but she did not report the incident to him because she did not know how he would react. Approximately 20 minutes later, when her husband left for the pharmacy, Capt KH reported the incident to a civilian nurse and her doctor. Capt KH was not able to identify Appellant by name other than the partial description of his nametag. Based on the information provided by Capt KH, the nurse and doctor quickly deduced that Capt KH was describing Appellant. At trial, other witnesses testified that Appellant was an attending medical technician for Capt KH. This fact was further confirmed by the PACU logbook and a video depicting Appellant transferring Capt KH on a gurney from the PACU to the same-day surgery ward.

The evidence that Appellant provided care to Capt KH in the PACU was overwhelming in both quantity and quality and unrebutted at trial. In sharp contrast, the evidence of the abusive sexual contact of Capt KH's breasts and labia by Appellant consisted of the in-court testimony of Capt KH and her report of the sexual abuse within a half hour of its occurrence. Given that the reported sexual abuse took place as Capt KH was recovering from the effects of anesthesia and surgery, Appellant challenged both the reliability and accuracy of Capt KH's account.

Based on Capt KH's report of sexual abuse, the Air Force Office of Special Investigations opened an investigation and contacted previous PACU patients to determine if they had experienced any inappropriate touching while being cared for in the PACU. The investigation led to the discovery of two additional patients, both civilians. One, Ms. MF, alleged Appellant caused her hand to touch his penis over his clothing and the other, Ms. DM, alleged Appellant grabbed her breasts while taking off her EKG leads.[1]

---

[1] Appellant was acquitted of the offenses involving Ms. MF and Ms. DM.

Prior to closing arguments in the judge-alone trial, the Defense moved under Military Rule of Evidence 413 to preclude the Government from arguing the evidence of one charged offense to prove another charged offense. When trial counsel was asked if he planned to make a propensity argument, he indicated he would.

> So, under 413, I mean obviously what the rule is for is that [Appellant] has a propensity to sexually assault or to grab the [breasts] or touch the labia of women under his care in the PACU. That would be the first and foremost goal of arguing this and that fits squarely within the rule is he has a propensity to do this. Now, the other things that we're going to offer it for, . . . the propensity to assault people when they are in the PACU, but it's also to show the type of victim that he does go for.

The military judge, without benefit of the CAAF's decisions in *Hills* and *Hukill*, analyzed all of the proffered evidence and concluded that a "jury could find by a preponderance of the evidence that the offenses occurred." After employing the Mil. R. Evid. 403 balancing test, he ultimately ruled that all evidence that had been challenged under Mil. R. Evid. 413 was admissible for "general propensity purposes and permissible for the trial counsel to argue as such."[2]

Near the beginning of trial counsel's closing argument, he asserted Appellant had a propensity to commit the charged offenses. When making this statement, trial counsel used a presentation slide including the words "Three instances = Propensity" projected on a screen in the courtroom.

> Let's talk about something, what is this notion of propensity? What does that mean? The tendency or natural inclination to behave a certain way, which is not always negative, right, one can have a proclivity, a propensity to do something good. But, the issue here, Your Honor, is that's not what we have. This accused has a propensity to satisfy his own personal perverted sexual desires by robbing his victims of their dignity and intruding on their personal privacy. This goes to the core of who he is and what he's made of.

---

[2] We note that the Government did not articulate limited non-propensity purposes for the evidence of the other charged offenses to prove identity, absence of mistake, or intent under Mil. R. Evid. 404(b), nor did the military judge rule or otherwise indicate on the record that he would consider the evidence for those or other limited non-propensity purposes.

> Now, I discussed a moment ago, not one, not two, but three in-
> stances. One would be just chance, all right. Two, may be coinci-
> dence. But three, that is a pattern. That is propensity.

Trial counsel returned to the propensity argument as he addressed each of the charged offenses and again at the conclusion of his argument.

> And, notwithstanding that, if we are talking about this propen-
> sity, this pattern, it is completely consistent with what you've
> heard throughout this case, this sort of perverted sexual desire
> with women who can't react. Offensive touching, however slight,
> it is the same for essentially all of these specifications, Your
> Honor. But, it is offensive. Captain [KH] did not want this touch-
> ing either, and there is no medical reason for that touch to be
> there. There is just no excuse.

> This is about a picture, a three-dimensional picture of criminal
> propensity to do the same thing in the same way to women under
> his care. This picture is clear. This accused sexually assaulted
> these three women and is guilty of the charge and all four spec-
> ifications.

## II. DISCUSSION

In *Lightsey I*, unpub. op at *15, we concluded that the military judge committed evidentiary error by considering evidence of charged offenses for propensity. However, in reliance on the presumption that military judges know the law and follow it,[3] we found no reason to believe that the military judge misapplied either the presumption of innocence or the burden of proof in assessing Appellant's guilt. We thus assessed non-constitutional evidentiary error. We found the "case for the allegations involving Capt [KH] was very strong, especially considering the victim's contemporaneous report of abuse." *Lightsey I*, unpub. op at *13. Further, noting that the military judge acquitted Appellant of two of the specifications and acknowledged a clear understanding of spillover and its associated principles, we concluded the "propensity evidence was of marginal value and that the error did not have a substantial influence on the findings." *Id.* at *15. Additionally we stated "even if we were to apply the stricter constitutional standard in the case, we would find the error harmless beyond a reasonable doubt." *Id.*

The use of charged-conduct evidence as Mil. R. Evid. 413 propensity evidence for other charged offenses creates constitutional concerns regardless of

---

[3] *United States v. Mason*, 45 M.J. 483, 484 (C.A.A.F. 1997) (citing *United States v. Prevatte*, 40 M.J. 396, 398 (C.M.A. 1994)).

the forum. *Hukill*, 76 M.J. at 222. As such, the erroneous use of evidence in this case must be tested for prejudice under the standard of harmless beyond a reasonable doubt. *Id.* The error is harmless beyond a reasonable doubt when the error did not contribute to the appellant's conviction or sentence. *Hills*, 75 M.J. at 357 (citation omitted). An error is not harmless beyond a reasonable doubt when there is a reasonable possibility that the error might have contributed to the conviction. *Id.* (citation omitted).

"There are circumstances where the evidence is overwhelming, so we can rest assured that an erroneous propensity instruction did not contribute to the verdict by "tipp[ing] the balance in the members' ultimate determination." *Guardado*, 77 M.J. at 94 (alteration in original) (quoting *Hills*, 75 M.J. at 358). In *Guardado*, the CAAF was "not convinced that the erroneous propensity instruction played no role" in the conviction. *Id.* at 95. The appellant in *Guardado* was convicted, *inter alia,* of aggravated sexual contact of a child (his daughter), but acquitted of wrongful sexual contact with an adult friend and the rape of a fellow soldier. The panel had been instructed by the military judge that they could use evidence of each offense to prove propensity to commit the other offenses. Even accepting the lower court's finding that the child victim's testimony was credible, the CAAF found that the lack of "supporting evidence" made it difficult to be certain the conviction rested on the strength of the evidence alone. *Id* at 94; *cf. United States v. Moore,* ___ M.J. ___, No. 17-0323/AR., 2018 CAAF LEXIS 63 (C.A.A.F. 10 Jan. 2018) (mem.) (in Government's case, which included compelling victim and eyewitness testimony, the evidence of Appellant's guilt was overwhelming); *United States v. Luna*, No. 17-0495/MC., 2018 CAAF LEXIS 65 (C.A.A.F. 10 Jan. 2018) (mem.) (evidence overwhelming where victim's testimony was corroborated by witness testimony and incriminating text messages written by Appellant that implied he was at fault and could be jailed for his actions).

Additionally in *Guardado*, the CAAF explicitly rejected the argument that an acquittal of a charged offense necessarily means the evidence of that offense was not used for propensity.

> It simply does not follow that because an individual was acquitted of a specification that evidence of that specification was not used as improper propensity evidence and therefore had no effect on the verdict. It is conceivable that the panel found that Appellant committed the other three charged offenses by a preponderance of the evidence but not beyond a reasonable doubt. While not persuaded of Appellant's guilt to the point of convicting him, members could still have believed that it was more likely than not that Appellant sexually assaulted SW and CH

and used that evidence for propensity purposes, thus violating Appellant's presumption of innocence.

77 M.J. at 94.

The holdings in *Hukill* and *Guardado* compel us to test Appellant's case for constitutional error—whether the error was harmless beyond a reasonable doubt—and to do so regardless of the forum and without considering a partial acquittal as mitigating against the possible contribution of propensity evidence to the findings of guilty. In doing so we must also consider, especially in light of the trial counsel's repeated reliance during closing argument on Appellant's propensity to commit the offenses, whether Capt KH's testimony and prior statement, however credible, constituted evidence so overwhelming that it removed any reasonable possibility that the error contributed to the conviction. It did not. Even though we find Capt KH credible, her account about the sexual abuse described in her testimony and report lacked supporting evidence of the criminal sexual contact. Recognizing that the evidence of the other charged offenses provided independent corroboration of Capt KH's account and ready-made rebuttal to Appellant's claim that she imagined the sexual abuse, we are "not convinced that the erroneous propensity instruction played no role in the conviction." *Guardado,* 77 M.J. at 95. In such a case, we cannot be confident there is "no reasonable possibility" that propensity contributed to the verdict. *Hukill*, 76 M.J. at 222.

## III. CONCLUSION

The findings of guilt and the sentence are **SET ASIDE**. A rehearing is authorized. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court