*This opinion is subject to revision before publication.*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Gene N. WILLIAMS, Sergeant
United States Army, Appellant

**No. 23-0006**
Crim. App. No. 20130582

Argued October 24, 2023—Decided May 9, 2024

Military Judges: Karin G. Tackaberry (arraignment and pretrial motions), Tara A. Osborne (pretrial motions), Stephen E. Castlen (trial), and Christopher Martin (rehearing)

For Appellant: *Captain Kevin T. Todorow* (argued); *Colonel Michael C. Friess*, *Lieutenant Colonel Dale McFeatters*, *Major Bryan A. Osterhage*, *Major Sean Patrick Flynn*, and *Jonathan F. Potter*, Esq. (on brief); *Major Mitchell D. Herniak.*

For Appellee: *Captain Dominique L. Dove* (argued); *Colonel Christopher B. Burgess*, *Lieutenant Colonel Jacqueline J. DeGaine*, *Lieutenant Colonel Pamela L. Jones*, and *Captain Lisa Limb* (on brief); *Major Kalin P. Schlueter.*

Judge SPARKS delivered the opinion of the Court, in which Chief Judge OHLSON, Judge MAGGS, Judge HARDY, and Judge JOHNSON joined.

————————

Judge SPARKS delivered the opinion of the Court.

This case is before us for a third time. Previously, in 2013, a general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of one specification of rape of TW, four specifications of forcible sodomy of SW, and five specifications of assault consummated by a battery of SW, in violation of Articles 120, 125, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 928 (2000 & 2006). The panel sentenced Appellant to a dishonorable discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved only a bad-conduct discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to E-1. The lower court affirmed the findings and sentence. We granted review on whether the military judge abused his discretion by providing a propensity instruction, vacated the judgment of the lower court, and remanded the case to the lower court for further consideration of the granted issue in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F. 2016).[1]

Upon remand, the lower court again affirmed the findings and sentence, and we again reviewed the case. In our second decision, we found a *Hills* violation and set aside the findings of guilt as to the rape of TW specification, three specifications of forcible sodomy of SW, and the sentence.[2] We authorized a rehearing of the set aside findings and the sentence.

In 2019, Appellant was tried at a combined rehearing before a military judge at a general court-martial. The

---

[1] In *Hills*, we held that using charged misconduct as propensity evidence under Military Rule of Evidence 413 was an abuse of discretion and that the military judge's accompanying members' instructions "constituted constitutional error that was not harmless beyond a reasonable doubt." 75 M.J. at 353.

[2] We affirmed one specification of forcible sodomy of SW, by excepting the language of "divers occasions," and affirmed the five specifications of assault consummated by battery of SW.

rehearing offenses consisted of the three specifications of forcible sodomy of SW, and two new additional charges: one specification of aggravated sexual contact with EZ, a child under the age of twelve, and one specification of sodomy of EZ, a child under the age of twelve, in violation of Articles 120 and 125, UCMJ, 10 U.S.C. §§ 920, 925. The rape specification of TW, for which Appellant was found guilty at his first trial, and which we set aside and authorized for rehearing, was dismissed by the Government.

At the rehearing, contrary to his pleas, Appellant was found guilty of the three specifications of forcible sodomy of SW and one specification of child sodomy of EZ. Appellant's sentence for these offenses, along with the resentencing for the five specifications of assault consummated by battery of SW, was a dishonorable discharge, confinement for thirty-five years, forfeiture of all pay and allowances, and reduction to E-l.

On appeal, the lower court then set aside Appellant's conviction for child sodomy of EZ, finding it was statutorily time-barred pursuant to *United States v. McPherson*, 81 M.J. 372 (C.A.A.F. 2021). At this point, Appellant remained convicted of four specifications of forcible sodomy of SW, and five specifications of assault consummated by a battery of SW. The lower court reassessed Appellant's sentence in light of *United States v. Winckelmann,* 73 M.J. 11 (C.A.A.F. 2013), and concluded that it could affirm only so much of the sentence that provided for a dishonorable discharge, confinement for nineteen years, forfeiture of all pay and allowances, and reduction to the grade of E-1. We then granted review of the following issue:

> Whether the Army Court abused its discretion in reassessing Appellant's sentence.

*United States v. Williams*, 83 M.J. 257 (C.A.A.F. 2023) (order granting review).

This Court will set aside a sentence reassessment by a Court of Criminal Appeals only when necessary to correct an obvious miscarriage of justice or an abuse of discretion. *United States v. Harris*, 53 M.J. 86, 88 (C.A.A.F. 2000). We

hold that there was not an obvious miscarriage of justice and to the extent there was an abuse of discretion there is no prejudice.

## I. Background

### A. 2013 Court-Martial

The initial allegations against Appellant were brought by his ex-wives, SW and TW. Both testified to violent marriages that involved rape, in the case of TW, and forcible anal sodomy and battery, in the case of SW.

As we described in our prior opinion:

> Appellant married TW in May 2000. During trial, TW testified that while they were married, Appellant raped her on divers occasions between late 2000 and early 2003. TW claimed that Appellant forced her to have nonconsensual sex "[q]uite often, three or four times a week, sometimes every[]day of the week" over a 108-week period. TW's rape allegations formed the basis of Charge I.

> After Appellant and TW divorced in 2004, Appellant married SW. Appellant and SW were married for nearly eight years, during which time Appellant allegedly forcibly anally sodomized her and physically assaulted her multiple times. SW testified that on one occasion in November 2007, she escaped from Appellant's grasp while he was anally sodomizing her. She sought safety in their children's bedroom and attempted to barricade the door, but Appellant kicked in the door, causing it to come crashing down on her head. Scared for her life and bleeding from her head, SW ran to a neighbor's house for help. That neighbor called 911, and an ambulance transported SW to the hospital. Photographs taken that night document the broken door and SW's injuries from the assault.

*United States v. Williams*, 77 M.J. 459, 461 (C.A.A.F. 2018) (alterations in original) (footnote omitted).

**B. Rehearing**

At the rehearing, Appellant's stepdaughter, EZ, testified that, when she was seven or eight years old and living in Germany, Appellant drove her to a secluded part of the woods and put his penis in her anus. SW again testified that Appellant forcibly sodomized her on multiple occasions.

**C. Sentence Reassessment**[3]

On appeal, the lower court set aside Appellant's conviction for child sodomy of EZ, finding it was statutorily time-barred. Because the lower court set aside the child sodomy conviction, it next needed to determine whether it could reassess the sentence. First, the lower court determined by its setting aside of the sodomy of a child under the age of twelve, Appellant remained convicted of the same offenses approved by the convening authority from the first court-martial with the exception of the rape of TW specification previously set aside, and the two sodomy specifications that were no longer on divers occasions but on one occasion. Therefore, the lower court determined that it was limited in its sentence reassessment to no greater than Appellant's twenty years of confinement that was approved by the convening authority at his original court-martial pursuant to Article 63, UCMJ, 10 U.S.C. § 863 (2012), and Rule for Courts-Martial (R.C.M.) 810(d).

In *Winckelmann*, 73 M.J. at 15-16, we set forth the following list of four illustrative, although not exclusive, factors for the lower court to consider in determining whether to reassess a sentence or order a rehearing on the sentence:

---

[3] The case facts quoted and cited in this section were taken from the lower court's memorandum opinion on further review, *United States v. Williams*, No. ARMY 20130582, 2022 CCA LEXIS 345, 2022 WL 2100908 (A.F. Ct. Crim. App. June 10, 2022) (unpublished).

(1) Dramatic changes in the penalty landscape and exposure.

(2) Whether an appellant chose sentencing by members or a military judge alone. . . .

(3) Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses and, in related manner, whether significant or aggravating circumstances addressed at the court-martial remain admissible and relevant to the remaining offenses.

(4) Whether the remaining offenses are of the type that judges of the courts of criminal appeals should have the experience and familiarity with to reliably determine what sentence would have been imposed at trial.

(Citations omitted.)

Assessing the first *Winckelmann* factor, the lower court found that the dismissal of the child sodomy offense did not make "dramatic changes in the penalty landscape" in light of the offenses for which Appellant remained convicted, as he "still face[d] a maximum punishment of confinement for life without eligibility for parole." Evaluating the second factor, the lower court found that Appellant's choice of sentencing by a military judge at the rehearing favored reassessment. The lower court found that the third *Winckelmann* factor favored reassessment because the remaining offenses captured the "gravamen of [the] criminal conduct . . . in light of the offenses for which [A]ppellant was convicted in his original trial." In this regard, the lower court noted that "[t]he gravamen of criminal conduct in the original trial centered around SW and formed the basis of a significant number of the charges and specifications that spanned a variety of dates and locations," compared to the rape specification involving TW on one date and in one location. The lower court determined that the "gravamen of the criminal conduct [A]ppellant was charged with remain[ed] in the charges and specifications involving SW, along with the child sodomy charges." Finally, regarding the previously set

aside rape specification, the lower court found that the fourth *Winckelmann* factor favored reassessment because "based on [their] experiences as judges on [the] court," the judges of the lower court were "familiar with the offense of rape such that [the judges could] reliably determine what sentence would have likely been imposed had [A]ppellant not been convicted" of the rape specification. The lower court then reassessed the sentence affirming only so much of the sentence as provided for nineteen years of confinement, forfeiture of all pay and allowances, reduction to E-1, and a dishonorable discharge.

## II. Analysis

Appellant argues that the lower court failed to adequately analyze the final three *Winckelmann* factors. Appellant takes issue with the lower court finding that the second *Winckelmann* factor weighed in favor of reassessment because he was sentenced by a military judge at his second court-martial when "[t]he real sentence to be evaluated is the one adjudged at Appellant's first court-martial—done by members." Appellant argues that the third *Winckelmann* factor did not favor reassessment because although he stands convicted of four instances of forcible sodomy of SW these crimes were not the gravamen of his misconduct when compared to the rape of TW. Finally, Appellant contends that the fourth *Winckelmann* factor did not favor reassessment because the lower court was not familiar with the remaining offense of forcible sodomy because it has not been a criminal offense since 2016.

We will only disturb the lower court's sentence reassessment in order to prevent obvious miscarriages of justice or abuses of discretion. *Harris*, 53 M.J. at 88. As an initial matter, due to the complex procedural history, it is necessary for us to determine if the lower court had any sentence limitations when it conducted the sentence reassessment.[4] Article 63, UCMJ, states, in pertinent part:

---

[4] For purposes of this opinion, when we refer to "sentence reassessment" that includes both a Court of Criminal Appeals

> Upon a rehearing the accused may not be tried for any offense of which he was found not guilty by the first court-martial, and no sentence in excess of or more severe than the original sentence may be adjudged, unless the sentence is based upon a finding of guilty of an offense not considered upon the merits in the original proceedings.

The implementing rule further provides:

> When a rehearing or sentencing is combined with trial on new charges, the maximum punishment that may be imposed shall be the maximum punishment under R.C.M. 1003 for the offenses being reheard as limited in this rule, plus the total maximum punishment under R.C.M. 1003 for any new charges of which the accused has been found guilty.

R.C.M. 810(d)(1).

The 2013 court-martial convening authority approved Appellant's sentence of a bad-conduct discharge, confinement for twenty years, forfeiture of all pay and allowances, and reduction to E-1. At Appellant's rehearing, he was sentenced to a dishonorable discharge, confinement for thirty-five years, forfeiture of all pay and allowances, and reduction to E-l. At the time of the rehearing, this sentence complied with Article 63, UCMJ, even though it was a harsher sentence than the first court-martial sentence, as Appellant was found guilty of a child sodomy offense that was not considered on the merits at his original trial. However, when the child sodomy offense was later set aside by the lower court, Appellant was no longer found guilty of an offense that was not considered at his original trial. This negated the basis on which the thirty-five years of confinement was a permissible sentence. Thus, the lower court correctly began Appellant's sentence reassessment with a sentence limitation of no greater than

---

deciding if it can perform a sentence reassessment in accordance with *Winckelmann*, and a Court of Criminal Appeals performing a sentence reassessment.

twenty years of confinement, as limited by his original trial.[5]

The lower court's analysis considered both the first court-martial offenses and the rehearing offenses during its sentence reassessment review. Although Appellant was no longer found guilty of an offense that was not considered at his first court-martial when the lower court set aside the child sodomy conviction, this does not mean that the lower court was permitted to use the first court-martial, aside from the sentencing cap, in its sentence reassessment of the rehearing. We believe that part of the confusion as to which offenses to consider stems from the third factor in *Winckelmann* which states, "Whether the nature of the remaining offenses capture the gravamen of criminal conduct included within the original offenses." 73 M.J. at 16. Because the Court in *Winckelmann* reassessed the sentence from a single proceeding, the words "original offenses" were naturally used to describe the offenses charged in the first (and only) proceeding in that case. But here, there were multiple proceedings—Appellant's initial court-martial and the rehearing. In this situation, a Court of Criminal Appeals should look to the proceeding that resulted in a sentencing error—usually the most recent proceeding—when conducting a *Winckelmann* reassessment analysis. Because reassessment is conducted in response to a sentencing error, the analysis must therefore examine the proceeding that caused the error. Nothing that happened prior to the rehearing, aside from the sentencing cap, was relevant to the lower court's

---

[5] The lower court, however, failed to consider that in *United States v. Mitchell*, 58 M.J. 446, 448 (C.A.A.F. 2003), we stated that although the difference in a bad-conduct and dishonorable discharge may be subjective, for purposes of reviewing a rehearing "a dishonorable discharge is more severe than a bad-conduct discharge." Accordingly, the lower court erred by affirming Appellant's dishonorable discharge, which was more severe than the bad-conduct discharge approved by the convening authority at Appellant's first court-martial. We correct this error in our decretal paragraph.

sentence reassessment. We do not sanction the lower court's *Winckelmann* analysis for factors three and four that used the first court-martial's rape offense in its analysis. Nonetheless, Appellant forcibly sodomized and assaulted SW on multiple occasions. The offenses he is convicted of have a maximum confinement sentence of life without eligibility for parole. However, consistent with Article 63, UCMJ, and R.C.M. 810(d), his sentence was capped at twenty years by the first court-martial. Under these circumstances, his sentence to nineteen years of confinement is not an obvious miscarriage of justice and to the extent that there was an abuse of discretion there is no prejudice.

### III. Conclusion

The decision of the United States Army Court of Criminal Appeals is affirmed as to the findings and to only so much of the sentence as provides for a bad-conduct discharge, confinement for nineteen years, forfeiture of all pay and allowances, and reduction to E-1.