# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist STEPHEN C. MCGINN**
**United States Army, Appellant**

ARMY 20150726

Headquarters, Fort Hood
Douglas K. Watkins, Military Judge (arraignment)
Rebecca K. Connally, Military Judge (trial)
Colonel Ian G. Corey, Staff Judge Advocate

For Appellant: Major Patrick J. Scudieri, JA; Gregory M. Gagne, Esquire; Keith J. Scherer; Esquire (on brief); Captain Daniel C. Kim, JA; Gregory M. Gagne, Esquire; Keith J. Scherer; Esquire (on reply brief).

For Appellee: Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Cormac M. Smith, JA; Captain Jeremy Watford, JA (on brief).

27 March 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

HAGLER, Judge:

Appellant was convicted by an enlisted panel, contrary to his pleas, of sexual assault, battery, and a general disorder by photographing images of others' private areas without their consent, in violation Articles 120, 128, and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 920, 928, 934 (2012 & Supp. I 2014). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for twelve months, total forfeitures, and reduction to the grade of E-1.

We review this case under Article 66, UCMJ. In the sole assignment of error, appellant claims the military judge's Military Rule of Evidence [hereinafter Mil. R. Evid.] 413 instruction, which allowed the panel to consider charged misconduct for

propensity purposes, was error that eroded appellant's presumption of innocence.[1] Although we agree the military judge's instruction was erroneous, we find the issue was waived at trial, and further, it was harmless beyond a reasonable doubt.

## BACKGROUND

By all accounts, appellant and Specialist (SPC) LM[2] had been close friends since 2012, when they completed basic training together at Fort Benning, Georgia. Over the next two years at their first duty station, Fort Hood, Texas, the two worked and regularly socialized together, along with their company mates living in the barracks. But appellant sought a more intimate relationship. He often sent SPC LM text messages saying he loved him, and he asked SPC LM to give him a kiss when no one was watching. Although SPC LM remained close friends with appellant, he did not reciprocate appellant's increasingly romantic overtures. When appellant gave SPC LM a *Sports Illustrated* magazine signed by Pat Tillman—a seemingly extravagant gift on a junior soldier's pay—he asked another soldier to see if it was hanging on the wall of SPC LM's barracks room. It was not. Ultimately, SPC LM responded to appellant's continuing texts, indicating he could not love him romantically, as appellant apparently hoped.

In late 2012, after a night of drinking, appellant slept over in SPC LM's room. Specialist LM awoke to discover appellant in bed with him and appellant's hand down his pants, touching his genitals.[3] Specialist LM angrily confronted appellant and ordered him from the room, but SPC LM did not report the alleged incident. Specialist LM's dating and eventual marriage to Ms. EM in 2013 further strained the two friends' relationship. At one point, SPC LM discovered that appellant had taken pictures of images displayed on SPC LM's iPhone, to include sexually explicit images of SPC LM and his wife. Specialist LM confronted appellant and threatened to file a complaint, but the two soldiers remained friends.

---

[1] Appellant personally raises several matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), including two claims that derive from the assigned Mil. R. Evid. 413 instructional error. First, that trial counsel's request for the Mil. R. Evid. 413 instruction constitutes prosecutorial misconduct. Second, that defense counsel's failure to object "properly" to the instruction request constitutes ineffective assistance of counsel. We find no merit in these and the remainder of appellant's *Grostefon* matters.

[2] Although SPC LM was no longer in the Army at the time of trial, we will refer to him throughout this opinion as "SPC LM."

[3] This alleged incident was the basis for Additional Charge I, of which appellant was acquitted. It is included as background to the assigned error, as Additional Charge I was addressed in the military judge's Mil. R. Evid. 413 instruction.

In January 2014, appellant and SPC LM deployed with their company from Fort Hood to Camp Stanley, Korea. On a Sunday evening in early February, appellant, SPC LM, and other soldiers from their platoon were socializing in SPC LM's barracks room. Over the course of a few hours that evening, SPC LM ingested a total of four 10-milligram pills of Ambien that he had been prescribed as a sleep aid. He took two by mouth, and he crushed and snorted two more pills. Specialist LM recalled little of what happened after he snorted the Ambien. At some point, he became aware of appellant performing fellatio on him on a bed in a vacant barracks room down the hall.[4] He later recalled appellant straddling him and ejaculating on his torso.[5]

The next morning, SPC LM awoke in his own barracks room with the feeling he had experienced a bad dream but with no clear recollection of the previous night's events. After unit physical training, appellant approached SPC LM and told him what had occurred. Specialist LM reacted angrily and complained to a non-commissioned officer, and the report was forwarded up the chain of command and to the local Criminal Investigation Command (CID) office.

A few days later, appellant waived his rights and was interviewed by a CID agent.[6] In the interview, appellant admitted to the physical acts underlying Charges I and II but claimed they were consensual.[7] He also made several statements that betrayed his awareness of SPC LM's impaired condition: "[SPC LM] was all fucked up. I saw him snort some, you know, pills that he's on. . . . I saw [SPC LM] snort some more . . . . Would this have happened sober? Who's to say no, but probably not. . . . [SPC LM said to appellant,] 'Whenever I do this, I feel like I'm on 'shrooms and stuff' . . . . [SPC LM] lays on the ground, and we're like, . . . 'We gotta . . . put this guy to bed, seriously.'" He said SPC LM appeared to

---

[4] This conduct was the basis for Charge I. The three specifications of Charge I were alleged in the alternative as a sexual act: 1) when the victim was incapable of consenting due to impairment, and appellant knew or reasonably should have known of the victim's condition; 2) when appellant knew or reasonably should have known the victim was asleep; or 3) by causing bodily harm and without consent. Consistent with the military judge's instruction, the panel found appellant guilty of only one of the three theories, Specification 1, and acquitted appellant of Specifications 2 and 3.

[5] This conduct was the basis for Charge II, a single-specification simple battery in violation of Article 128, UCMJ. The panel found appellant guilty of this specification.

[6] A video recording of the interview was admitted into evidence and published to the panel.

[7] During the CID interview, appellant denied any recollection of the sexual contact from 2012 alleged in Additional Charge I.

have no memory of the events when appellant spoke to him the next morning after physical training. Finally, appellant admitted to taking pictures of sexually explicit images on SPC LM's iPhone, but he claimed that, too, was with SPC LM's consent.[8]

At trial, evidence from multiple sources corroborated SPC LM's testimony regarding his impairment and apparent inability to consent. The government offered expert witness testimony on the standard prescription dosage for Ambien (i.e., a single 10-milligram pill), the likely effect of ingesting four times that amount, and the accelerated onset likely to result from snorting the drug. Two fellow soldiers—both admitted friends of appellant—gave first-hand observations of SPC LM's condition while they were in his room with appellant. While differing in minor details, the testimony of both witnesses paints a vivid picture of a young man whose condition deteriorated visibly in a short period of time. Specialist LM had difficulty walking, exhibited mumbling and halting speech, struggled to follow conversations, confused a Budweiser carton with a fire truck, and became progressively drowsy until he ultimately lay down on the floor and fell asleep. Both witnesses testified they left the room shortly after appellant told them he would get SPC LM to bed, and they saw appellant helping SPC LM get up from the floor.

Testifying on the merits, appellant admitted to his acts with SPC LM in February 2014 but continued to maintain they were consensual. However, his testimony about SPC LM's condition differed dramatically from his CID interview. He testified SPC LM was "fine[,]" participated in "perfectly good conversations," and was "completely functional, completely awake the entire time." He claimed SPC LM did not lie down, but merely sat on the floor, walked down the hall under his own power, took off his own clothing, and gave appellant specific directives to perform oral sex and ejaculate on him during their encounter. Finally, he testified he had taken pictures of images displayed on SPC LM's iPhone, but claimed he did so with SPC LM's consent.

At the conclusion of testimony, government counsel requested a Mil. R. Evid. 413 instruction, having disclosed to the defense its intent to do so on 15 October 2015. Defense counsel objected that this notice was untimely, as it was given after the original scheduled trial date, and because defense counsel was on paternity leave at that time. Although the military judge did not explicitly overrule the objection, discussion in an Article 39(a), UCMJ, session established that notice was provided well before appellant entered his pleas on 3 November 2015. Aside from timeliness, defense counsel did not make a motion in limine or otherwise object to the Mil. R. Evid. 413 instruction, even after the military judge asked if he had any other response to the request. Ultimately, defense counsel confirmed he had no objection to the final draft of proposed instructions as a whole.

---

[8] This conduct was the basis for Additional Charge II, a single-specification general Article 134, UCMJ, violation. The panel found appellant guilty of this specification.

4

After making the necessary findings, the military judge issued the Mil. R. Evid. 413 instruction, advising the panel members that they could use evidence of the sexual offenses alleged in Charge I to show appellant's propensity to commit the sexual offenses alleged in Additional Charge I, and vice versa.[9]

## LAW

As our higher court's recent decisions clearly establish, the Mil. R. Evid. 413 instruction was error. "It is antithetical to the presumption of innocence to suggest that conduct of which an accused is presumed innocent may be used to show a propensity to have committed other conduct of which he is presumed innocent." *United States v. Hills*, 75 M.J. 350, 356 (C.A.A.F. 2016). Using charged conduct as Mil. R. Evid. 413 evidence to show propensity to commit other charged conduct "is error, regardless of the forum, number of victims, or whether the events are connected." *United States v. Hukill*, 76 M.J. 219, 222 (C.A.A.F. 2017). Yet these cases do not tell us that such error is per se prejudicial, requiring relief. Unless an instructional error is affirmatively waived, when "there are constitutional dimensions at play, [appellant's] claims 'must be tested for prejudice under the standard of harmless beyond a reasonable doubt.'" *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006) (quoting *United States v. Kreutzer*, 61 M.J. 293, 298 (C.A.A.F. 2005)).

## DISCUSSION

Because appellant admitted to the acts underlying Charges I and II on the stand and during the CID interview, the key issue at trial for those charges was consent. Specifically, did SPC LM have the capacity to consent, and did he actually consent to the acts underlying those charges? The government's theory was that SPC LM was asleep or impaired and thus incapable of consent, while the defense theory was that he was awake, coherent, and actively participated in the consensual acts. There was no dispute about whether those acts occurred and thus, no discussion of appellant's propensity to commit the acts themselves.

---

[9] The military judge's verbal and written instruction to the panel on Mil. R. Evid. 413 mistakenly stated it applied to Specifications 1 and 2 of *Additional Charge II* (the general Article 134, UCMJ, charge regarding photographic images), rather than *Additional Charge I* (the Article 120, UCMJ, charge alleging abusive sexual contact in 2012). Neither defense nor government trial counsel objected to this instruction. As appellant acknowledges in his brief, it is clear that the military judge was referring to Additional Charge I, as Additional Charge II contains only one specification and was not a sexual offense subject to Mil. R. Evid. 413. We find this misstatement did not affect the outcome of the trial, as it is clear from the remainder of the instruction that it refers to the specifications alleging sexual offenses in Additional Charge I.

### *Factual Sufficiency*

Before we reach the assigned error, we will first address factual sufficiency, as it informs our ultimate decision on prejudice. Comparing appellant's trial testimony with the video of his CID interview, we see several consistencies: his admissions to the acts in Charges I and II, his admission to taking pictures of images on SPC LM's iPhone, his claim that these acts were all done with SPC LM's consent, and his lack of memory of the acts alleged in Additional Charge I. But there are also multiple inconsistencies in appellant's statements concerning the events of February 2014.

The most striking discrepancy is in his observation and awareness of SPC LM's impairment. As discussed in detail above, appellant described SPC LM to CID as "all fucked up," said he was aware that SPC LM was taking sleep medication, and said he saw SPC LM snort pills two times. In contrast, appellant's trial testimony portrayed SPC LM as "fine[,]" coherent, and in full command of his physical and mental faculties. These claims are difficult to reconcile with appellant's statements in his CID interview. Further, appellant's testimony differed sharply from that of the other soldiers present in SPC LM's room that night, who portrayed SPC LM as obviously impaired. Government counsel highlighted these inconsistencies extensively during cross-examination.

From our review of the entire record, it is clear that the version of events appellant offered at trial is neither reasonable nor credible, given his previous statements to CID and the contradictory testimony of multiple, credible witnesses. We are convinced beyond a reasonable doubt that SPC LM was incapacitated and unable to consent to the acts in Specification 1 of Charge I, and that he did not in fact consent to the act in Charge II. Thus, we find these convictions are factually sufficient. Likewise, we find the conviction of Additional Charge II to be factually sufficient.

### *Mil. R. Evid. 413 Instruction: Waiver*

Regarding the Mil. R. Evid. 413 instruction, defense counsel objected only to timeliness of the government's notice, not to the instruction itself. This objection was correctly denied, as the government provided notice eighteen days before appellant entered his pleas.[10] After the draft instructions were finalized, defense counsel confirmed to the military judge that he had no objection. Appellant concedes this fact but argues it should not constitute waiver, because timeliness was the "only objection available to the defense," because further objection would have

---

[10] Mil. R. Evid. 413(b) requires the government to disclose its intent to offer such evidence at least five days prior to entry of pleas.

been "futile," and because they should not be expected to object to what, in their view, was settled law at the time.[11]  We disagree.

Although the *Hills* decision post-dated this trial, the concepts and arguments underpinning *Hills* were available at trial.  For example, defense counsel could have objected to the propensity instruction as unfairly prejudicial under Mil. R. Evid. 403.  He could have argued the evidence of abusive sexual contact, which was the basis Additional Charge I, did not satisfy the preponderance standard required for the Mil. R. Evid. 413 instruction.  Finally, he could have objected on constitutional grounds, arguing that using charged misconduct to show propensity undercuts the presumption of innocence.  The defense made no such objections.  We find the defense objection to timeliness alone, which lacked merit, failed to preserve an objection to the substance or issuing of the instruction.  Further, we find defense counsel's affirmative denial of any objection to the final draft of instructions waived the issue on appeal.

### Mil. R. Evid. 413 Instruction: Prejudice

Although we find waiver, we recognize the constitutional issues raised in this case and are mindful of our superior court's admonition in *United States v. Guardado*: "'[T]he language of R.C.M. 920(f) . . . and the great weight of our precedent clearly call for plain error review' when an appellant fails to preserve an instructional error."  77 M.J. 90, 93 (C.A.A.F. 2017) (quoting *United States v. Davis*, 76 M.J. 224, 229 (C.A.A.F. 2017)).  Thus, we will further examine whether the erroneous Mil. R. Evid. 413 instruction contributed to the finding of guilty to Specification 1 of Charge I.  We find beyond a reasonable doubt that it did not.

At the outset, it is worth noting that the only sexual offense conviction the panel returned was to the charge where appellant admitted to the underlying sexual act.  He denied the acts underlying Additional Charge I (i.e., abusive sexual contact in 2012), and the panel found him not guilty of this charge.  Yet, it is still possible the panel believed the evidence on this charge met the lesser preponderance-of-the-evidence standard and as a result concluded appellant was predisposed to commit the offense in Charge I.  As the Court of Appeals for the Armed Forces (CAAF) noted in *Guardado*, "Such an outcome is exactly the type of result we sought to guard against in *Hills*." *Id*. at 94.  At the same time, the CAAF also noted, "There are circumstances where the evidence is overwhelming, so we can rest assured that an

---

[11] Appellant claims, "Finding waiver in this case would be tantamount to holding that if counsel adheres to settled law, counsel may be nevertheless waiving errors on appeal if that law should change." App. Reply Br. at 3.  We disagree.  Counsel may raise and thereby preserve an objection to an instruction they believe is improper, regardless of the instruction's inclusion in the *Military Judge's Benchbook* or what they perceive as the current state of the law.

erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" *Id.* (quoting *Hills*, 75 M.J. at 358).

Acknowledging the risk identified in *Hills*, we conclude it was not a reasonable possibility in this case. The evidence of the sexual act in Charge I was undisputed; appellant admitted to that element. As discussed in our factual sufficiency review, the evidence on the contested element—SPC LM's capacity to consent—was extensive and offered by multiple sources. The panel members heard directly from appellant on this element, just as they heard from the witnesses who testified about the victim's noticeable level of impairment. Further, government counsel made no reference to propensity, predisposition, or Mil. R. Evid. 413 during argument.[12] Finally, we see no logical link between the allegations in Additional Charge I and the contested element in Specification 1 of Charge I.[13] Under these circumstances, when much more probative, direct evidence of the contested issues was admitted, it strikes us as implausible that the panel would have given any weight to the Mil. R. Evid. 413 instruction.

In sum, this is not a straightforward case of an alleged victim's testimony, standing alone, bolstered by an improper Mil. R. Evid. 413 instruction. The record contains extensive, credible, corroborating evidence of SPC LM's condition: his own testimony about the drugs he took, expert testimony about the effect of this type and quantity of drug, and two other witnesses' direct observations of his impairment. Further, appellant's admissions to the underlying acts, his knowledge of SPC LM taking drugs that night, and his statements to CID about SPC LM's condition portray his awareness of the victim's inability to consent, and ultimately, appellant's guilt. Presented with this body of evidence, we have no question that appellant would have been found guilty had the judge not given the Mil. R. Evid. 413 instruction. Thus, we conclude the propensity instruction was harmless beyond a reasonable doubt.

---

[12] The military judge specifically asked if trial counsel he intended to argue Mil. R. Evid. 413, so he might make the required findings for its use, but trial counsel responded in the negative.

[13] Additional Charge I was charged in the alternative as sexual conduct: 1) when appellant knew or reasonably should have known the victim was asleep; or 2) by causing bodily harm and without consent. The government did not charge inability to consent due to impairment as a theory in Additional Charge I. Given these charges and appellant's admission to the sexual act in Charge I, it is difficult to imagine how propensity could have "tipped the balance" for the panel to find the victim was impaired and incapable of consent.

**CONCLUSION**

The findings of guilty and sentence are AFFIRMED.

Senior Judge BURTON and Judge SCHASBERGER concur.

FOR THE COURT:

JOHN P. TAITT
Acting Clerk of Court