# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
BURTON, HAGLER, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 OMAR A. HERNANDEZ**
**United States Army, Appellant**

ARMY 20160217

Headquarters, 8th Theater Sustainment Command
Mark Bridges, Military Judge
Colonel Anthony Febbo, Staff Judge Advocate (pretrial)
Lieutenant Colonel Ryan B. Dowdy, Staff Judge Advocate (post-trial)

For Appellant:  Captain Daniel C. Kim, JA; Emmanuel V. Tipon, Esquire (on brief).

For Appellee:  Colonel Tania M. Martin, JA; Lieutenant Colonel Eric K. Stafford, JA; Major Michael A. Korte, JA; Lieutenant Colonel Karen J. Borgerding, JA (on brief).

10 August 2018

-----------------------------------
MEMORANDUM OPINION
-----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Private Omar Hernandez appeals his convictions for the rape of Private (PV2) MW and abusive sexual contact upon Private First Class (PFC) BO.  Appellant asserts the military judged erred by instructing the members they could consider each of the charged sexual offenses for propensity purposes when considering the other charged sexual offenses.[1]  We agree the military judge erred in providing this propensity instruction.  We conclude, that while this error was harmless beyond a

---

[1] Appellant also asserts the military judge abused his discretion, first by denying appellant's request for a continuance to obtain the assistance of an expert, and secondly by admitting a prior consistent statement over a defense objection.  Finally, appellant claims the cumulative errors in this case denied appellant a fair trial.  After due consideration, we find no merit in these assigned errors.

reasonable doubt in relation to the offense against PFC BO, we are unable to conclude the same as to the offense involving PV2 MW and, accordingly, take corrective action in our decretal paragraph.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of violating a general order and one specification of driving under the influence of alcohol in violation of Articles 92 and 111, Uniform Code of Military Justice, 10 U.S.C. §892, §911 (2012) [UCMJ]. An enlisted panel convicted appellant, contrary to his pleas, of one specification of abusive sexual contact and two specifications of sexual assault in violation of Article 120, UCMJ.[2] The panel sentenced appellant to a dishonorable discharge, confinement for six years, forfeiture of all pay and allowances, and reduction to the grade of E-1, a sentence later approved by the convening authority.

## BACKGROUND

### 1. Assault of Private MW (Specification 1 of Charge III).

Appellant and PV2 MW went through basic training and advanced individual training together. They both were assigned to Schofield Barracks, Hawaii, though in different units. On 15 February 2015, appellant and one of appellant's friends drove PV2 MW and two of her friends to the mall. They ate, and before heading back to base, bought alcohol.

During the outing, appellant appeared to flirt with PV2 MW and be fixated on her. Private MW did not have romantic interests in appellant. Once back at the barracks, appellant went back to PV2 MW's room. She was annoyed that her friends had left her alone with appellant, as they knew she did not have romantic interests in him, so she told appellant they should go hang out at PFC G's room. They went to PFC G's room and continued to drink and watch TV.

After leaving PFC G's room, appellant followed PV2 MW back to her room and asked if he could continue to hang out. Appellant sat on the chair and PV2 MW sat on her bed as they watched Netflix. Eventually, PV2 MW told appellant she wanted to "lock up." She testified that after she indicated she wanted to go to sleep, appellant sat down next to her and began kissing her. She pushed him away but he pressed her back against the wall and using his weight pressed her onto the bed with him on top. After removing their clothing, appellant forcibly placed his penis in her vagina, and did not stop despite her repeated requests.

---

[2] The panel acquitted appellant of one specification of sexual assault. The military judge dismissed Specification 2 of Charge III as being an unreasonable multiplication of charges with Specification 1 of Charge III after the announcement of findings.

2

Appellant's testimony at trial was very different. He claimed he sat next to PV2 MW on the bed, she put her leg over him and they began kissing. He further testified that they took their clothes off, she climbed on top of him, and she inserted his penis into her vagina. The sex ended when he got on top and she said stop. He stopped immediately, but because he did not want to go home in the dark, he stayed up texting his friend.

The following morning PV2 MW called her sister. The sister sensed that PV2 MW was very upset and asked her what was wrong. Initially, PV2 MW was reluctant to say anything but during the conversation, Private MW told her sister that she had been forced to have sex. Also that morning PV2 MW had some discussion with her suitemate, PFC EC. Private MW did not tell PFC EC she had been assaulted. At trial PFC EC testified that she believed PV2 MW and appellant had consensual sex, though she could not articulate a basis for that supposition.

As part of the CID investigation, PV2 MW contacted appellant. Appellant responded back using Snapchat. At trial, the government introduced the Snapchat exchange, which included the following exchange:

> Private MW: I haven't been to [sic] great honestly that's why I wanted to talk to you instead of just trying to forget that night[.] I wanted to know why you did that to me[.]
>
> Appellant: I have been wanting to talk and explain but you didn't wanna [sic] talk to me. I wasn't all there that night but I stopped and I sat there and asked myself what I did. I drank too much we both did but I can't remember it all. You don't know how I've felt always thinking why I messed up.
>
> If I can take it back I would and not hurt you the way I did and ruin our friendship [. . .] I hate this feeling I have inside I know you can't forgive me. Just know that wasn't my intent.
>
> PV2 MW: Then why didn't you stop when I told you too [sic], you knew I didn't want that and you just did it anyway[.] [Y]ou were only my friend and nothing more and I made it clear to you many times [. . . .]
>
> Appellant: I know and I messed it all up.

2. *Assault of Private First Class BO (Specification 4 of Charge III).*

On 5 April 2015, appellant and Specialist (SPC) A attended a party at a co-worker's house. Appellant only knew a few people at the party. While there, he met

3

PFC BO.  During the course of the night appellant spoke to PFC BO intermittently. Appellant played beer pong and drank throughout the night.  Appellant lost contact with his friend SPC A and did not realize that SPC A had left the party.

As it got later the host, SPC CJ, went to bed and other people fell asleep in the other rooms or in the living room.  Private First Class BO and Petty Officer Third Class (PO3) H went to sleep in one of the bedrooms upstairs.  Meanwhile, appellant was ready to leave the party but could not find his friend, SPC A. Appellant went into various rooms looking for SPC A.  He woke SPC CJ and asked where to find SPC A.  Specialist CJ told appellant they would find him in the morning and went back to bed.

Appellant went to the room where PFC BO was sleeping and laid on the floor next to the bed.  Private First Class BO woke up when she thought she felt someone touching her leg.  She fell back asleep.  Again she awoke with the feeling someone was touching her under her shorts; she felt the hand touch her thigh, buttocks and genitalia.  She grabbed the wrist of the person touching her and started yelling.  The wrist PFC BO grabbed was appellant's.  Appellant pretended to be sound asleep. Private First Class BO woke PO3 H, who believed that appellant was asleep and did not want to get involved.  Private First Class BO dragged appellant out of the room and towards the stairs.

Specialist CJ, wakened by the noise, got up to see what was going on.  He separated the two and talked to each one.  At first appellant denied doing anything, but eventually admitted to SPC CJ that he "fucked up."  Private First Class BO called a friend, got a ride home, and reported the incident right away.

Appellant admitted touching PFC BO's leg, but denied touching her anywhere else.  He made this claim during an interview with CID and when testifying at trial. Though asked both times, appellant had no explanation why he reached up from lying on the ground to grope PFC BO who was on a bed.

### 3. *Military Rule of Evidence 413 Propensity Instruction*

The government charged appellant with sexual assault of PV2 MW, abusive sexual contact of PFC BO, as well as violating a general order by consuming alcohol under the age of 21 and driving under the influence of alcohol.  In a pretrial motion, the government sought to use evidence of the sexual assault of PV2 MW and the evidence of the sexual misconduct towards PFC BO under Military Rule of Evidence [Mil. R. Evid.] 413 to establish that appellant had a propensity to commit sexual misconduct.

The defense did not file a written brief opposing the government's motion but, at a pretrial motions hearing, objected to the government's request.  The military judge deferred ruling on the motion until after presentation of evidence at trial. Consistent with the military judge's ruling, the government did not discuss propensity in its opening statement.  After the close of the evidence, the military

judge made his ruling granting the government's Mil. R. Evid. 413 motion.  He tailored an instruction which read:

> In this case, there is an exception to the general rule that you may not use a belief that the accused is guilty of one offense as a basis for inferring, assuming, or proving that he committed any other offense.  In a criminal case in which the accused is charged with sexual offenses, evidence of the accused's commission of another sexual offense or offenses may be considered for its bearing on any matter to which it is relevant, to include the accused's propensity to commit sexual offenses.
>
> Therefore, you may consider the evidence of the charged offenses in which [PV2 MW] is an alleged victim for its tendency, if any, to show the accused's propensity to commit the charged offenses in which [PFC BO] is an alleged victim.  Likewise, you may consider the evidence of the charged offenses in which [PFC BO] is an alleged victim for its tendency, if any, to show the accused's propensity to commit the charged offenses in which [PV2 MW] is an alleged victim.
>
> However, evidence of another sexual offense, on its own, is not sufficient to prove the accused guilty of a charged offense.  You may not convict the accused solely because you believe he committed another sexual offense or offenses or solely because you believe the accused has a propensity to commit sexual offenses.  Bear in mind that the government has the burden to prove that the accused committed each of the elements of each charged offense.

Neither the defense nor the government objected to the instruction.  The trial counsel only made one reference to the military judge's instruction.

## LAW AND DISCUSSION

The decision to admit evidence is reviewed for an abuse of discretion. *United States v. Hukill*, 76 M.J. 219, 221 (C.A.A.F. 2017) (citation omitted).  "The meaning and scope of M.R.E. 413 is a question of law that is reviewed de novo." *United States v. Hills*, 75 M.J. 350, 354 (C.A.A.F. 2016) (citation omitted).  In *Hills*, the Court of Appeals for the Armed Forces (CAAF) found that using R.C.M. 413 to admit evidence of charged misconduct to establish other charged misconduct "violated Appellant's presumption of innocence and right to have all findings made clearly beyond a reasonable doubt, resulting in constitutional error." *Id*. at 356.  Since the instruction given by the military judge was in error, we must test that error

5

for prejudice under the standard of harmless beyond a reasonable doubt.[3] *United States v. Wolford*, 62 M.J. 418, 420 (C.A.A.F. 2006). An error is not harmless beyond a reasonable doubt when there is a reasonable possibility the error complained of might have contributed to the conviction. *United States v. Moran*, 65 M.J. 178, 187 (C.A.A.F. 2007) (citation omitted); *United States v. Chandler*, 74 M.J. 674, 685 (Army Ct. Crim. App. 2015).

### 1. Effect of the Ruling with Regard to Specification 1 of Charge III (Rape of PVT MW)

The government case involving PV2 MW was strong. There was no question that a sexual act occurred, as appellant admitted to CID and at trial that he had sexual intercourse with PVT MW. The issue was whether PVT MW consented to that act.

The government introduced evidence which showed PVT MW had expressed a lack of interest in a romantic relationship with appellant and that PVT MW told her sister about being assaulted the morning after the incident. The evidence included text messages between appellant and PVT MW after the assault wherein appellant admitted to "messing up" and lamenting the fact PVT MW "can't forgive him." Testimony of witnesses corroborated the events leading up to PVT MW and appellant winding up in PVT MW's barracks room. All of this evidence lent credence to PVT MW's testimony and made her a very credible witness.

The defense case was weak. Appellant testified and was not particularly credible. In relation to the text messages, defense counsel suggested through the redirect of appellant that he may not have fully communicated what he meant in the messages to PVT MW because English was appellant's second language. This suggestion was undercut by appellant's two videotape interviews with CID and his in-court testimony where he was articulate and had little or no accent. Defense counsel did not shake the testimony of PVT MW; they brought in several witnesses to testify that PVT MW had a reputation for untruthfulness, but in the end her testimony was more credible than appellant's. The strongest part of the defense case was the testimony of PFC EC, who observed PVT MW the morning after the incident. Based on this encounter, PFC EC believed the interaction between appellant and PVT MW had been consensual.

Though there was external corroboration for some facets of the government case, in the final analysis we cannot conclude that improper propensity evidence and the erroneous propensity instruction did not contribute to the verdict.

---

[3] Appellant objected to the government's motion, thereby preserving the error.

## 2. Effect of the Ruling with Regard to Specification 4 of Charge III
### (Abusive Sexual Contact with PFC BO)

The government case involving PFC BO was overwhelming. In addition to witnesses who saw PFC BO grabbing appellant and dragging him from the room, appellant admitted to touching the leg of PFC BO and admitted he "fucked up." Appellant had no explanation for why he would have reached up from the floor to grab PFC BO. Though defense tried to undermine the credibility of PFC BO her actions in the immediate aftermath of the event spoke louder than any words.

The defense case was weak. Appellant's testimony corroborated the victim's testimony in many details. Where appellant deviated from the victim's description–for example, appellant denied he was dragged from the room–there were witnesses who corroborated PFC BO's version of events. Here we can "rest assured that an erroneous propensity instruction did not contribute to the verdict by 'tipp[ing] the balance in the members' ultimate determination.'" *United States v. Guardado*, 77 MJ 90, 94 (C.A.A.F. 2017) ( quoting *Hills*, 75 M.J. at 358). We are convinced, beyond a reasonable doubt that the Mil. R. Evid. 413 instruction did not contribute to the finding of guilty as to this specification.

## CONCLUSION

Upon consideration of the entire record, the finding of guilty of Specification 1 of Charge III is set aside. The remaining findings of guilty are AFFIRMED. The sentence is set aside. The same or a different convening authority may: 1) order a rehearing on Specification 1 of Charge III and the sentence; 2) dismiss Specification 1 of Charge III and order a rehearing on the sentence only; or 3) dismiss Specification 1 of Charge III and reassess the sentence, affirming no more than a dishonorable discharge and confinement for two years.[4]

Senior Judge BURTON and Judge HAGLER concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[4] In reassessing the sentence we are satisfied that the sentence adjudged, absent Specification 1 of Charge III, would have been at least a dishonorable discharge and confinement for two years. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986) and *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). The reassessment being both appropriate and purging the record as it stands of error does not otherwise limit the sentence that may be adjudged at a rehearing. *See* UCMJ, art. 63.